# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   3:24-MJ-20
)
4975 Live Oak Drive, Dayton, Ohio )
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC s. 2114(a) | robbery of a postal carrier |
| 18 USC s. 1951 | interference with commerce through robbery |
| 18 USC s. 924(c) | use, carrying, and brandishing of a firearm during/in relation to a crime of violence |

The application is based on these facts:

See Attached Affidavit of Joseph Rossiter

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____*Joseph Rossiter*_____
*Applicant's signature*

Joseph Rossiter, US Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by reliable electronic means. By telephone.

Date: 1/8/24

_____*[signature]*_____
Peter B. Silvain, Jr.
United States Magistrate Judge

City and state: Dayton, Ohio

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, **Joseph L. Rossiter,** being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a United States Postal Inspector, having been so employed since May 2016. I am presently assigned to the Cincinnati Field Office, Pittsburgh Division of the United States Postal Inspection Service (USPIS) with investigative responsibility for southwest Ohio and northern Kentucky. I have gained experience through completion of the Basic Inspector Training (BIT) in May of 2016. During BIT training, I was instructed in all phases of criminal investigation, such as criminal law, search and seizure, field enforcement techniques, firearms proficiency, drug and narcotics identification, drug and narcotics field testing, interviewing, and evidence collection. Since May 2016, I have worked with various federal, state, and local law enforcement agencies in the prosecution of crimes involving the U.S. Mail and the U.S. Postal Service including but not limited to mail theft, burglaries, robberies, homicides, and mailed narcotics.

2. I make this affidavit in support of an application for a warrant for the following location – namely, 4975 Live Oak Drive, Dayton, Ohio 45417 (hereinafter "PREMISES"), which is more fully described in Attachment A – as there is probable cause to believe that evidence, instrumentalities and fruits of violations of Title 18, United States Code, Section 2114(a) (assault on a person having lawful charge, control, or custody of any mail matter, or of any money, or other property of the United States, with intent to rob, steal, or purloin such mail matter, money or other property of the United States); Title 18, United States Code, Section 1951 (Hobbs Act robbery also known as interference with commerce through robbery); and Title 18, United States

Code, Section 924(c) (use, carrying, and brandishing of a firearm during and relation to a crime of violence) exist can be found at this location. Specifically, I believe that the items more fully described in Attachment B exist and can be found at this location.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

4. On or about December 18, 2023, at approximately 10:25 A.M., a United States Postal Service (USPS) Letter Carrier was delivering mail on foot near 4808 Marburn Avenue in Dayton, Ohio, when an unknown male (hereinafter "the suspect") approached the USPS Letter Carrier. The suspect (later determined to be Marvin Brown as detailed below) displayed a firearm and demanded the bag of the USPS Letter Carrier. The USPS Letter Carrier complied with this tacit threat and surrendered to the suspect the mail bag, which contained U.S. Mail. The suspect also took the USPS Letter Carrier's USPS Scanner. After taking these items, the suspect then fled on foot to a waiting grey sedan that was also parked on Marburn Avenue in Dayton, Ohio.

    a. The USPS Letter Carrier attempted to return to his USPS Vehicle, which was parked in the vicinity of 1350 Honeybee Drive in Dayton, Ohio. As the USPS Letter Carrier turned north to Honeybee Drive from Marburn Avenue, the USPS Letter Carrier noticed that the suspect was now trying to gain access to the postal vehicle of the USPS Letter Carrier.

    b. The USPS Letter Carrier immediately turned around and headed south on Marburn Avenue, walking towards a utility worker who had parked near the dead end of

Honeybee Drive. As the USPS Letter Carrier approached the utility worker, the USPS Letter Carrier heard what sounded like two gunshots fired from the vicinity of his USPS vehicle. The utility worker allowed the USPS Letter Carrier to enter the utility worker's vehicle, and they called 911.

    c.    The police from Trotwood, Ohio (hereinafter "TPD") responded to the scene of the robbery and found two bullet holes in the back of the USPS vehicle. TPD recovered one bullet at the scene. USPIS searched the USPS vehicle and its contents again later that date and recovered a second bullet lodged in a mail tub.

    5.    Law enforcement interviewed the USPS Letter Carrier following the incident and the letter carried described their assailant as follows: a black male in his twenties or thirties standing approximately 5'7" to 5'9" with a medium build; the assailant had short black braids or twists that were half inch to maybe an inch long, and he was wearing a black hooded work jacket similar to a Carhart brand. The USPS Letter Carrier also noted that there was something blue – namely, a flimsy plastic wrap – over the license plate of the assailant's getaway vehicle, a dark colored sedan.

    6.    On December 18, 2023, Postal Inspectors obtained video surveillance from a residence near the location of the robbery – namely, the 1200 block of Honeybee Drive at approximately 10:23 A.M. The surveillance captured a person similar in description to the suspect with his arms in the vicinity of the license plate area of a grey Buick sedan. (Based on my training and experience, I know that individuals involved in mail thefts often use getaway vehicles to which they affix stolen or altered license plates. Consistent with that modus operandi, I believe that the suspect was tampering with or altering the plates on the Buick to conceal the identity of its owner.) Notably, the sedan had distinctive wheel rims. The video

then captured the suspect briefly enter the passenger seat of the sedan, exit the vehicle, and then walk in the direction of the USPS letter carrier. The sedan then backed up and drove in the direction of the USPS Letter Carrier. These events occurred moments before the robbery. Given the suspect's presence at this vehicle and his later flight in it, I believe that, with the help of an accomplice (namely, the sedan's driver), he used this car to facilitate the robbery.

7. On or about December 18, 2023, law enforcement reviewed information and video footage collected from license-plate readers (sometimes referred to as Flock Cameras) in the vicinity of the robbery. Flock Cameras captured a sedan matching that used in the robbery near 1705 Guenther Road, Dayton in the hours before and after the incident. Specifically, the sedan bore the same distinctive rims as the vehicle from the robbery, and 1705 Guenther Road was in the vicinity of the incident. The sedan captured on the Flock Cameras had Ohio License Plate JTE 3883, and based on BMV records, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

8. On or about January 7, 2024, at approximately 10:21 a.m., a black male (later identified as Marvin Brown as detailed below), entered the Family Dollar store located at 4523 W. Third Street, Dayton, Ohio. Wearing a facemask and displaying a handgun at the Family Dollar clerk, Brown demanded that the clerk surrender everything in the register. The clerk complied with this implicit threat and surrendered to Brown $172 – the contents of the register. Brown exited the Dollar General and fled in a dark colored Buick sedan with a plastic bag over its license plate.

9. On or about January 7, 2024, at 11:17 a.m., Brown entered a different Family Dollar at 40 N. James H. McGee, Dayton Ohio. Wearing a facemask, Brown demanded that the clerk surrender everything in the register. Brown removed a handgun from his waistband and

moved the slide back, chambering a round.  (Based on the chambering of a round as well as my experience around firearms, I conclude that Brown had a real firearm with him at the time of the robbery).  The clerk complied with this threat and placed the drawer of the register on the counter.  Brown removed the money from the drawer – roughly $135.00 – and exited the store; he entered the passenger seat of a Buick sedan with a black trash bag over the license plate.  The sedan then drove away.

      10.     Based on my training and experience as well as discussions with other law enforcement officers, I know that Family Dollar is an interstate business with thousands of stores located throughout the country, including Dayton, Ohio.  I know that Family Dollars receive and sell one or more items or goods that were manufactured or originated outside of Ohio and thus had to move in interstate commerce to reach this state.  When the aforementioned Family Dollars were robbed, both shut down temporarily depriving those businesses of sales during that time – including the sale of goods that previously had been shipped in interstate commerce.  Accordingly, I conclude that the robberies of these Family Dollars affected interstate commerce.

      11.     Around the time of the robberies, Flock Cameras captured images of the Buick sedan with the plastic bag over its plate.  As law enforcement used the Flock Cameras to follow the movements of the Buick sedan, they noticed that at some time the plastic bag was either removed from or fell of off the Buick revealing Ohio license plate JTE 3883

      12.     Based on this information, police began to search for the Buick and soon located it at parked at a Sunoco gas station in Dayton, Ohio, at approximately 12:53 p.m. on January 7, 2024 (or approximately an hour-and-a-half) after the last Family Dollar robbery.  Police approached the vehicle and discovered Marvin Brown and Parris Lawrence inside of it.  Notably, Brown was wearing bright blue sweat paints and boots identical to those worn by the individual

who performed the Family Dollar robberies. Officers detained Brown and Lawrence, transporting them to a station for interview. Notably, during subsequent searches of Brown, Lawrence, and the vehicle, police did not locate either a firearm or robbery proceeds.

13. Local officers separately interviewed Brown and Lawrence. Prior to these interviews, law enforcement Mirandized Brown and Lawrence. Both separately agreed to speak with police. During his interview, Brown admitted that he had robbed both Family Dollars at gunpoint. He further advised that the firearm was a real – namely, a Taurus handgun. Brown claimed that he gave the firearm to a friend following the robbery. During her interview, Lawrence acknowledged that she knowingly served as the getaway driver for Brown following these robberies.

14. Federal law enforcement officers – namely, Postal Inspectors – subsequently interviewed Lawrence. Even though she previously had been Mirandized, Postal Inspectors again advised her of her rights, and she agreed to speak with them. During the interview, Lawrence admitted that she had served as the getaway driver following the robbery of the USPS letter carrier on December 18, 2023. She further explained that Brown had committed the robbery itself with a real firearm. Lawrence proceeded to give details of the incident that proved consistent with her presence at the robbery. Specifically:

    a. Lawrence stated that she and Brown discussed robbing the mailman the night before the incident. According to Lawrence, Brown told her that, through the robbery, they could obtain packages and checks people were sending close to Christmas; Brown explained that a friend of his had committed a similar robbery and that Brown believed that he could complete one too.

b. According to Lawrence, on December 18, 2023, she did not want to participate in the robbery, but that Brown forced her to go. Lawrence drove him to the robbery scene in a sedan and dropped him off for the robbery. She then picked him moments later after the robbery was complete. █████████████████████████████████████████████████████████████████████████████████████████████████████████ Lawrence recalled that Brown was angry as the letter carrier's bag contained no items of value. Lawrence explained that Brown threw the letter carrier's bag in the trash.

c. Investigators asked Lawrence concerning the handgun used in both the Family Dollar robberies as well as that used in the postal carrier robbery. Lawrence indicated that Brown had used the same firearm in both incidents. She described the firearm as a black, real handgun. Lawrence advised that, after robbing the Family Dollars on January 7, 2024, she and Brown had returned to the PREMISES and that Brown hid the firearm at that location before they were stopped by police later that day. ██████████████████████████████████████████████████████████████████████████████████████

d. I believe that there is corroboration for portions of Lawrence's statements, lending credibility to them. Notably, she described the events of the postal robbery in detail and had knowledge of the items stolen from the letter carrier, which confirms her presence before, during, and after that event. Her description of the real handgun matches Brown's own admission that he used a Taurus during the Family Dollar incidents and the fact that one of the clerk's reported the suspect chambering a round in the gun during the robbery. Moreover, Brown matches the physical description that the USPS Letter Carrier gave to investigators

concerning his assailant. (Moreover, when detained for the Family Dollar robberies, Brown had in his possession a dark, Carhart-style jacket, just like the robber wore during the postal incident). Based on this corroboration of her statements and her own admissions implicating herself in criminal activity, I find credible and true her assertion that Brown only yesterday hid the firearm at the PREMISES.

15. Postal Inspectors also interviewed Brown. Brown provided his home address as 4975 Live Oak Drive, Dayton, Ohio, i.e., the PREMISES – just as Lawrence had indicated. Inspectors provided Brown with his Miranda rights, which he waived. Brown denied any involvement in the robbery of the letter carrier on December 18, 2023.

16. Following the interview, law enforcement searched CLEAR – a database that compiles police and public information concerning individuals – and found records tying Brown to the PREMISES. On January 8, 2024, law enforcement performed surveillance at the PREMISES, and the residence appears occupied. For instance, while the storm door on the residence was closed, the front door to the residence was open as though someone was trying to allow light into the location.

17. Based on the foregoing, I believe that there is probable cause to believe that the firearm used in the various robberies as well as the cash proceeds of the Family Dollar robberies exists and can be found at the PREMISES. Brown admitted that he lived at this location. He further acknowledged that, during the Family Dollar robberies, he brandished a real Taurus handgun at the clerks. While Brown claimed that he had disposed of the gun, I know that individuals involved in serial robberies such as detailed in this affidavit are often reluctant to part with a firearm that they have acquired and will keep that tool of the trade at their residence. I also know that individuals involved in robberies often keep the proceeds of their thefts at their

personal residences for safekeeping as well as easy spending. Lawrence's statements – which are corroborated and against penal interest – have veracity and lend support to these conclusions. Lawrence detailed how on two separate occasions following robberies that she and Lawrence retreated to the PREMISES with contraband from these incidents. On December 18, 2023, following the postal robbery, they fled to the residence with the letter carrier's bag. After the Family Dollar robberies, they went to the PREMISES where Brown discarded the firearm there. Moreover, when arrested mere hours after the Family Dollar robberies, neither Brown nor Lawrence had in their possession a firearm or the stolen cash – indicating that they had placed these items somewhere – namely, the PREMISES – in the interim. Given Brown's ties to that residence, the common practice of robbers secreting their tools and contraband at their homes, his own admission that he possessed a real firearm during the Family Dollar robberies, and Lawrence's statements, I believe that the Premises holds evidence of federal crimes.

## CONCLUSION

18. Based on the foregoing, I request that the Court issue the proposed warrant.

Respectfully submitted,

*Joseph Rossiter*
_____
Joseph L. Rossiter
Postal Inspector
US Postal Inspection Service


Subscribed and sworn to before me on _____January 8_____, 2024

Peter B. Silvain, Jr.
United States Magistrate Judge

## ATTACHMENT A

### Description of place to be searched

Based on the facts detailed in affidavit, the Affiant believes probable cause exists to search the following person(s) and place:

1. 4975 Live Oak Dr, Dayton, OH 45417 including all outbuildings and curtilage; the place to be searched is a single-family, one-story residence with white siding, black, trim, a black roof, and a white storm door, with number 4975 above the mailbox on the front left side of the residence.  Photos of **4975 Live Oak Dr, Dayton, OH 45417** are below.





## ATTACHMENT B

### Particular Things to be Seized

Evidence, fruits, instrumentalities, and contraband of the following federal violations of Title 18, United States Code, Section 2114(a) (assault on a person having lawful charge, control, or custody of any mail matter, or of any money, or other property of the United States, with intent to rob, steal, or purloin such mail matter, money or other property of the United States); Title 18, United States Code, Section 1951 (Hobbs Act robbery also known as interference with commerce through robbery); and Title 18, United States Code, Section 924(c) (use, carrying, and brandishing of a firearm during and relation to a crime of violence), including:

a. Firearms, ammunition, gun holsters, gun boxes, or items reflecting the purchase or possession of firearms or ammunition;

b. United States currency totaling $307;

c. Materials and items demonstrating Marvin Brown's occupancy at or possessory interest in the search location.